UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MARTIN J. WALSH, Secretary of Labor, United States
Department of Labor,

                              Plaintiff,

            -against-

TOP NOTCH HOME DESIGNS CORP.  d/b/a TOP NOTCH,
 and LEONIDIS "LUIS" PRIFTAKIS, Individually and as
Owner,

                          Defendants.
------------------------------------------------------------------------X

**ORDER**

CV 20-05087 (GRB) (JMW)

**WICKS,** Magistrate Judge:

> *"No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying [the] opponent's case."[1]*

Some go fishing to catch whatever is biting, not quite sure what they'll get.  Others pursue a more targeted approach, seeking to catch a certain type of fish, using specific bait and tackle.  Approaches to discovery seem to fall into both camps.  Here, Plaintiff claims Defendants' pursuit of certain discovery is an overly broad fishing expedition, that is, that Defendants' net is simply cast too wide.

Plaintiff, Secretary of Labor, commenced this action, pursuant to Sections 16(c) and 17 of the Fair Labor Standards Act ("FLSA"), to restrain Defendant Top Notch Home Designs Corp. ("Top Notch"), a construction company specializing in siding and roofing, and Defendant Leonidis Priftakis, individually and as owner of Top Notch, from obstructing the Secretary's investigation and retaliating against cooperating employees, as well as to recover back wages and liquidated damages for Top Notch and Priftakis' ("Defendants") payment practices and recordkeeping in

---

[1] *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

violation of Sections 7, 11(a), 11(c), 15(a)(2)-(3), and 15(a)(5) of the FLSA.  Before the Court is

Defendants' motion, pursuant to Fed. R. Civ. P. 37(a)(3)(B),[2] to compel Plaintiff to disclose the

identities and unredacted statements of seventeen employee-informants, and to disclose

information concerning Wage Hour Investigator Nancy Agudelo's ("WHI Agudelo") workload

and findings in other FLSA investigations.

For the reasons that follow, the Court denies Defendants' motion to compel (DE 44).

## BACKGROUND

On October 11, 2019, the Wage and Hour Division ("WHD") initiated an investigation into

Defendants' pay and recordkeeping practices.  (DE 27 ¶ 46.)  According to the Amended

Complaint, the investigation revealed that Defendants (1) failed to provide employees with

overtime wages; (2) failed to record employees' hours worked; and (3) interfered with the

investigation by providing false information to the WHD, and by harming, or threatening to harm,

employees, and their families, who cooperated with the Department of Labor's investigation.  (*Id.*

¶¶ 3-6.)  The investigation also revealed that a sixteen-year-old was performing roofing activities,

and that Defendant Priftkis lied to WHI Agudelo, stating that the minor was over the age of

eighteen.  (*Id.* ¶ 48.)

On October 22, 2020, as the investigation was unfolding, Plaintiff filed a Complaint to

restrain Defendants from obstructing the Secretary's investigation and retaliating against

cooperating employees, in violation of Sections 11(a) and 15(a)(3) of the FLSA.  (DE ¶ 1.)  The

Complaint alleged that Defendants refused to comply and provided false information to the WHD.

(*Id.* ¶¶ 21-22.)  The Complaint also alleged that Defendant Priftakis threatened to kill or deport

any employee who cooperated with the investigation.  (*Id.* ¶¶ 18, 24.)  As a result, Plaintiff alleged

---

[2] Defendants cite to Fed. R. Civ. P. 37(2)(B), instead of, presumably, Fed. R. Civ. P. 37(a)(3)(B).  (DE 44 at 3.)

that several informants either refused to testify, or expressed serious concern in continuing to cooperate with the investigation. (*Id.* ¶ 25.) On October 28, 2020, a preliminary injunction was granted, enjoining Defendants from further obstructing the investigation and retaliating against employees. (DE 10.)

On July 14, 2021, the Complaint was amended to include violations of Sections 7, 11(c), and 15(a)(2) of the FLSA. (DE 27 ¶ 1.) Plaintiff alleges that Defendants failed to provide overtime wages. (*Id.* ¶ 42.) Specifically, it is alleged that employees were only compensated a flat daily rate of $110.00 to $225.00, even though employees generally worked a total of 57 to 69 hours per week. (*Id.* ¶¶ 40-41.) Additionally, Plaintiff alleges that Defendants failed to maintain proper records of employees' daily and weekly hours worked, wages paid, as well as regular and overtime rates of pay. (*Id.* ¶¶ 44-45.)

On August 16, 2021, Defendants served Plaintiff with, *inter alia*, a request for production of documents. (DE 44 at 2.) On October 29, 2021, Plaintiff provided Defendants with five sets of documents. (*Id.*) Included in these documents were the statements of seventeen employee witnesses ("informants" or "government witnesses"). (DE 45 at 1-2.) However, because of the Informant Privilege, the statements were "minimally redacted" to prevent disclosure of the informants' identities as well as any other identifying information.[3] (*Id.* at 2; DE 45-1 at 3.)

---

[3] Plaintiff states that the redacted statements contain information that reveals employees' hours worked and wages paid (DE 45 at 1), and that "the Secretary did not redact informants' reports of . . . start times, end times, and estimates of hours worked . . ." (DE 45 at 4). However, at another point in Plaintiff's memorandum, Plaintiff stated that the Secretary "redacted . . . in some instances, hours and dates of employment." (*Id.* at 2.) Reconciling these two points, the Plaintiff appears to refer to specific hour redactions on specific days, but the overall hours were disclosed, including the general start times and end times. This is likely because the Complaint itself alleged, on average, how many hours per day and week, the employees alleged to have worked, and because Plaintiff stated multiple times that they did not redact the alleged hours worked and that they have included start times, end times, and estimates of the hours worked in the production of discovery. Nonetheless, even if, in some instances, hours that tend to reveal the informants' identities were redacted, such as specific hours on a certain date that would enable Defendants to determine who the informants were, this would not affect today's analysis.

On February 2, 2022, and again on March 15, 2022, Defendants sent Plaintiff deficiency letters, seeking production of the unredacted statements. (*See generally* DE 44-1; DE 44-2.) Acknowledging the existence of the Informant Privilege, Defendants argue that the privilege must give way because Defendants have no other way to prepare a defense. (DE 44-1 at 3; DE 44-2 at 3.) However, Plaintiff refused to disclose the requested information, claiming that Defendants have not met their burden to overcome the privilege. (DE 45 at 3.)

Defendants' March 15 Deficiency Letters, also requested, *inter alia*, information regarding WHI Agudelo's caseload and findings in other FLSA cases, between October 2016 and October 2019 ("the relevant period"). (*See generally* DE 44-3.) Defendants' request arises after WHI Agudelo testified to Defendants that investigator bonuses are based on performance. (DE 44-3 at 2-3; DE 44-4 at 2.) Defendants argue that this information is necessary to determine whether WHI Agudelo was impacted or otherwise influenced in her assessment in this investigation. (DE 44 at 2.) Plaintiff refused to comply with Defendants' request, claiming that the information sought is irrelevant and overburdensome to produce. (DE 45 at 4-7.)

On June 21, 2022, in response to Plaintiff's refusal to produce the requested documents, Defendants filed the instant motion to compel. (DE 44.) Defendants seek to compel disclosure of the identities and unredacted statements of the seventeen informants, as well as information regarding the number of cases that WHI Agudelo handled between October 2016 and October 2019, and how many of those cases were found to be in violation of the FLSA. (*Id.* at 4.)

Plaintiff opposes both requests. (DE 45 at 1.) In relation to Defendants' first request, Plaintiff reasserts the Informant Privilege. (*Id.*) As for Defendants' second request, Plaintiff reasserts that WHI Agudelo's caseload and findings in other FLSA investigations are not discoverable because they are irrelevant to the case at issue, and producing the requested

4

information would be overburdensome, time consuming, and disproportionate to Defendants'

needs.  (*Id.* at 6.)  Plaintiff also notes that WHI Agudelo expressly testified that bonuses are not

based on findings, nor caseload.  (*Id.* at 5; DE 44-4 at 3-4.)

## ANALYSIS

We start with the rules.  Pursuant to Fed. R. Civ. P. 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Information "is relevant if: '(a) it has any tendency to make a fact more or less probable

than it would be without the evidence; and (b) the fact is of consequence in determining the

action.'"  *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *11 (S.D.N.Y.

Feb. 16, 2016) (quoting Fed. R. Evid. 401).  Moreover, "[t]he party seeking the discovery must

make a *prima facie* showing that the discovery sought is more than merely a fishing expedition."

*Evans v. Calise*, No. 92 Civ. 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994); *see also*

*Mandell v. The Maxon Co., Inc.*, No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16,

2007) ("[T]he party seeking discovery bears the burden of initially showing relevance.").  In that

vein, the discovery sought by the parties must be, as stated by Rule 26, proportional to the needs

of the case, taking into consideration such aspects as the importance of the issues, the amount in

controversy, the parties' resources and access to the information sought, and the importance of the

information sought to the asserted claims or defenses.  *Sibley v. Choice Hotels Int'l*, CV 14-634

(JS)(AYS), 2015 WL 9413101, at *2–3 (E.D.N.Y. Dec. 22, 2015).  It is beyond cavil that

ultimately "[m]otions to compel are left to the court's sound discretion."  *Mirra v. Jordan*, No. 13-

5

CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016); *see also Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court").

It is against this backdrop that both branches of the motion to compel is considered.

### A. *Are the Informants' Identities Shielded from Disclosure?*

"There is no fixed rule with respect to disclosure of an informant's identity . . . ." *Carbajal v. Vill. of Hempstead*, No. CV024270(ADS)(ETB), 2003 WL 23138447, at *2 (E.D.N.Y. Dec. 22, 2003) (citing.*Roviaro v. United States*, 353 U.S. 53, 62 (1957). However, "[t]he burden of establishing the need for disclosure is upon the person who seeks it," in this case the movant. *In re U. S.*, 565 F.2d 19, 23 (2d Cir. 1977) (citing *United States v. Prueitt*, 540 F.2d 995, 1004 (9th Cir. 1976)). This burden is overcome by the movant "establish[ing] that the information sought is both relevant and essential to the presentation of his case on the merits, . . . and that the need for disclosure outweighs the need for secrecy." *Carbajal*, 2003 WL 23138447, at *2 (internal citation and quotation omitted). And the burden is considered a heavy one at that. *See United States v. Jimenez*, 789 F.2d 167, 170 (2d Cir. 1986) ("[T]he defendant has the heavy burden of showing that disclosure is 'essential to the defense.'") (quoting *Scher v. United States*, 305 U.S. 251, 254 (1938). The privilege, however, only applies to the informant's identity as well as contents of communication which tends to reveal the informant's identity. *Carbajal*, 2003 WL 23138447, at *2 (quoting *Roviaro*, 353 U.S. at 60).

Courts have refused to order disclosure of informants in cases arising under the FLSA. *Sec'y. of Lab. v. Superior Care Inc.*, 107 F.R.D. 395, 397 (E.D.N.Y. 1985) (citing Weinstein & M. Berger, 2 *Weinstein's Evidence* ¶ 510[05] at 510-29; C. Wright & A. Miller, *Federal Practice & Procedure: Civil § 2019* n. 77). Those courts refusing to compel disclosure have found that

6

the employee informer's identity is usually unrelated to the proof offered at trial, and that anonymity helps diffuse the fear of retaliation.[4] *Id.* There is of necessity a balance to be considered. That is, a defendant's right to prepare a defense can outweigh the privilege when the Secretary seeks to introduce witnesses that Defendant did not have an opportunity to depose. *Id.* And, "the details of how and when that disclosure will occur, and the extent to which it will incorporate the substance of witness statements, are best left to the discretion of the district judge before whom [the] case will be tried." *Herman v. Crescent Pub. Grp., Inc.*, No. 00 Civ. 1665 SAS., 2000 WL 1371311, at *8 (S.D.N.Y. Sep. 21, 2000).

While a case is in its discovery phase, courts generally refuse to direct disclosure when a defendant has other means to prepare for trial. *Superior Care*, 107 F.R.D. at 397 ("Superior Care's need to obtain the investigator's reports does not outweigh the importance of protecting the informers . . . [because] Superior Care has a number of alternatives it may pursue that do not require revelation of an informer's identity. For example, Superior Care is free to depose or interview any of its current or former employees"). Cost is not a factor in determining whether Defendant has other means to prepare for trial. *Id.*; *see also Martin v. New York City Transit Auth.*, 148 F.R.D. 56, 65 (E.D.N.Y. 1993) ("[T]he mere cost of deposing all dog handlers who might have been interviewed by the government is not a sufficient ground to vitiate the informants' privilege.").

Here, Defendants claim that without the identities, Defendants will in no way be able to prepare an adequate defense. (DE 44 at 3.) They claim the fear of employer retaliation is speculative at best, noting that an injunction is already in place. (DE 44-1 at 3.) Further,

---

[4] *See also Dole v. Loc. 1942, Int'l Bhd. of Elec. Workers*, *AFL-CIO*, 870 F.2d 368, 372 (7th Cir. 1989) ("[T]he government need not make a threshold showing that . . . retaliation is likely, because of the significant policy consideration behind the privilege, as well as the difficulty of such proof").

Defendants claim that disclosure is necessary to determine whether the informants are the ones retaliating against Defendants. (DE 44 at 3.) Lastly, Defendants claim that Plaintiff redacted essential information from the statements, such as the informants' alleged hours worked. (*Id.*)

Plaintiff counters that the Informant Privilege must not give way because Defendants have other means to prepare for trial, including the ability to depose any past or current employee. (DE 45 at 3-4.) Plaintiff also argues that disclosure should not occur at the discovery stage when the Secretary has yet to solidify his witness list and the fear of retaliation is great. (*Id.* at n.2-3.) Lastly, Plaintiff notes that the Secretary produced hundreds of documents to Defendants and that redactions were limited to the extent that the information tends to reveal identifying information, such as an employee's name or personal experience. (*Id.* at 1, 3-4.) Plaintiff states that reports of the informant's general hours worked, including start times, end times, and estimates of hours worked, were not redacted from the informant statements. (*Id.* at 3-4.)

Here, Defendants have not met the heavy burden of establishing the need for disclosure outweighing the government's need for secrecy. First, the Court rejects Defendants' claim that they have no other way to prepare a defense. Defendants have several adequate alternatives, including the ability to depose their past and current employees, and to review their own records as well as the hundreds of documents that Plaintiff produced during discovery, including the redacted statements, which contain the alleged start times, end times, and estimates of the hours worked. *See Superior Care*, 107 F.R.D. at 397; *see also New York City Transit Auth.*, 148 F.R.D. at 65 (noting that the cost of deposing all past and current employees is irrelevant).

Second, fear of employer retaliation is not merely speculative here . Defendants contradict themselves by claiming that the fear of retaliation against employees is speculative at best, while concurrently claiming that the fear of retaliation against Defendants, themselves, necessitates

disclosure. However, Defendants have not cited any authority to support this contention, nor have they provided reasons to even speculate whether fear of retaliation against Defendants is plausible. For example, unlike Plaintiff's claim, Defendants have not alleged that employees made any threats or remarks to Defendants.  Even assuming there was a genuine fear of employee retaliation, the fear of employer retaliation is certainly greater here and warrants protection.  This is because, in addition to the fact that this is an FLSA case, the complaint alleged that Defendant Priftakis threatened to deport, harm, and, *inter alia*, kill employees who cooperated with the investigation. *See Superior Care*, 107 F.R.D. at 397 (noting that the fear of employer retaliation in FLSA cases are not speculative, nor remote); *see also Crescent Publ'g Grp., Inc.*, 2000 WL 1371311, at *6 ("[T]he threat of retaliation is far from remote or speculative even after an employee leaves the defendant's payroll . . . .") (citation omitted).  The very basis of this action as originally commenced was to restrain Defendants from obstructing the Secretary's investigation by, *inter alia*, retaliating against employees that cooperated with the Department of Labor.  Moreover, the fact that an injunction is already in place does not reduce fear of further retaliation, but rather sheds light that retaliation is at issue in this case.

Third, the informants' identities are not discoverable because the case is in its discovery stage.  Although a Defendant's need for disclosure generally exceeds the governments need for secrecy when an informant will testify at trial, the details of how and when disclosure will occur are best left to the discretion of the trial judge, at a later stage in the case. *See Superior Care*, 107 F.R.D. at 397 (holding that disclosure was not ripe because the Secretary had not yet sought to introduce witnesses at trial); *Crescent Publ'g Grp., Inc.*, 2000 WL 1371311, at *8 (holding that disclosure is not proper at the discovery stage).

9

In sum, the Court denies the motion to compel the disclosure of the identities and unredacted statements of the seventeen informants because this case is still in its discovery stage, the fear of employer retaliation is significant, and Defendants have other adequate means to prepare for trial.

### B. Is the Information Regarding WHI Agudelo's Other Work an Improper "Fishing Expedition"?

Defendants seek information regarding the number of cases that WHI Agudelo handled between the relevant period, and how many of those cases were found to have violated the FLSA. (DE 44 at 4.) These cases are not in any way related to the instant facts or parties. (DE 44-3 at 2-4.) Defendants claim this information is relevant because WHD investigator bonuses are performance based. (DE 44 at 4.) Defendants claim this information will help determine whether WHI Agudelo's workload impacted or influenced her assessment and opinion in this investigation. (*Id.*)

Plaintiff opposes Defendants' demand, claiming the information has no relevance to the case at issue, and that complying with Defendants' request would be overburdensome, time consuming, and disproportionate. (DE 45 at 6-7.) Plaintiff notes WHI Agudelo testified that investigators do not receive bonuses based on caseload nor findings, and that similar cases, albeit in other jurisdictions, have concluded that information regarding other WHD investigations are not discoverable, absent any claim, defense, factual dispute, or general allegation at issue regarding those investigations. (*Id.* at 5.) Lastly, Plaintiff argues that even if Defendants' request were relevant, production under Rule 26 would not be required because the excess of three full days that Plaintiff estimates production will take, would be overburdensome and disproportionate to Defendants' needs in this case. (*Id.* at 6.)

***Fishing Expeditions are permitted, ut . . .***

Long ago, in the context of the newly adopted Federal Rules of Civil Procedure, Eastern District of New York Judge Grover M. Moscowitz observed that, "[l]imitations which have been placed upon deposition-taking by state courts, such as the necessity of having the affirmative upon the issue on which examination is sought, find no basis in the new Rules.  It will not avail a party to raise the familiar cry of 'fishing expedition.'" *Laverett v. Cont'l Briar Pipe Co.,* 25 F. Supp. 80, 82 (E.D.N.Y. 1938).  Discovery devices are the very "bait and tackle" used for discovery fishing expeditions.  That is, focused and proportional discovery sought, *i.e.,* which should be a search for facts to support a claim or defense, is by its very nature, a legitimate fishing expedition.  Thus, not all fishing expeditions are improper.  *See, e.g.*, *In re Initial Public Offering Sec. Litig.,* 241 F. Supp. 2d 281, 324-26 (S.D.N.Y. 2003) (Sheindlin, J.) ("So-called 'fishing expeditions' may not be all bad, however"); *accord,* 8A Charles Alan Wright *et al***.,** Federal Practice & Procedure: Civil § 2206 (1994) ("[A]n objection that a request for inspection is a fishing expedition should be given short shrift.  It is true that the party seeking discovery must still designate what it wishes to inspect, but all this obstacle means is that the would-be angler must have a general idea of what kind of fish he or she is hoping to catch."); *see generally* Elizabeth G. Thornburg, *Just Say "No Fishing": The Lure of Metaphor*, 40 Univ. of Mich. J. L. Reform 1 (2006) (discussing history and use of "fishing expeditions" in law), available at: https://repository.law.umich.edu/mjlr/vol40/iss1/2.  Rather, a clear distinction should be made between legitimate targeted demands and an unfocused "roving inspection or fishing *excursion*" (*Welty v. Clute*, 29 F. Supp. 2, 2 (W.D.N.Y. 1939) (emphasis added)), designed to seek unspecified information.  That is, the propounder of the demand seeking disclosure must have some articulable idea of what it is the demand seeks to reveal in support of a claim or defense.

11

And even though the Supreme Court has sanctioned fishing in discovery by recognizing that, "[n]o longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case . . . the Court still recognizes that discovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

***"No Fishing Allowed" means the expedition is far too broad:***

Courts within the Second Circuit have denied fishing expeditions that are based purely on speculation. *See Grand Bahama Petroleum Co. v. Asiatic Petroleum Corp.*, 550 F.2d 1320, 1327 (2d Cir. 1977) (holding that Plaintiff's request for discovery was "nothing more than a[n] [impermissible] fishing expedition" because Defendant made no showing, "through affidavits or other means," to support his claim); "*Alvarado v. GC Dealer Servs. Inc.*, No. 18CV2915SJFSIL, 2018 WL 6322188, at *4 (E.D.N.Y. Dec. 3, 2018) (denying Defendants' discovery request of Plaintiff's alleged social security benefits because Defendants were only speculating how these documents could help them prepare a defense to Plaintiff's FLSA and NYLL claims against Defendants); *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("[C]ourts should not grant discovery requests based on pure speculation that amount to nothing more than a fishing expedition . . . .") (denying Plaintiff's request to compel disclosure of a Defendant's address, in order to verify whether Defendant has the means to pay punitive damages, because the lack of facts in Plaintiff's request, implied that this was an impermissible fishing expedition); *Tottenham v. Trans World Gaming Corp.*, No. 00 CIV. 7697 (WK), 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) (denying, in part, Defendant's discovery request to the documents which Defendant failed to establish objective support).

Notably, the courts in this Circuit have denied such discovery requests even prior to the Rule 26, 2000 Amendments when the reach of discovery was considered even broader.[5]  *See Collens*, 222 F.R.D. at 252 ("The 2000 Amendments [to Rule 26], while not intended to alter dramatically the scope of discovery, were intended to make it narrower than it was, in some meaningful way.") (quotation and citation omitted); *Surles v. Air France*, No. 00CIV5004 (RMB) (FM), 2001 WL 815522, at *4 (S.D.N.Y. July 19, 2001), *aff'd*, No. 00CIV5004 (RMB) (FM), 2001 WL 1142231 (S.D.N.Y. Sept. 27, 2001) ("Although there is little case law indicating how the new discovery standards should be applied, even under the former version of Rule 26, discovery requests could not be "based on pure speculation or conjecture.").  Thus, what can be distilled from the myriad of cases considering fishing expeditions is that at bottom, fishing expeditions are not allowed when premised on mere speculation of what may come up in the production.  *See, e.g., Cleveland–Goins v. City of New York*, 1999 WL 673343, *2. (S.D.N.Y. Aug. 30, 1999) ("Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support").  That is, when the proponent of the discovery demand is not entirely sure of what they are seeking or what will be produced, it's merely casting the net for a "gotcha."

*Au fond*, a fishing expedition is indeed permissible and legitimate when the information sought pertains to the subject matter of the case and seems reasonably calculated that discovery would lead to permissible evidence as to claims or defenses. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Although this requirement "has been construed broadly," the information sought must be relevant to an actual claim or defense.  *Id.* at 351-54 (denying

---

[5] "The Advisory Committee explained that the amendments were designed to 'focus [discovery] on the actual claims and defenses involved in the action,' and '[w]hen judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action.'" *Collens v. City of New York*, 222 F.R.D. 249, 252 (S.D.N.Y. 2004) (quoting Fed.R.Civ.P. 26(b)(1) Advisory Committee Notes to 2000 Amendments).

discovery of the list of potential plaintiffs in a class action suit because the evidence was not reasonably calculated to be admissible to support any raised claim or defense).  The analysis of course, must be done on a case-by-case and is factually driven.

Here, Defendants are impermissibly seeking to cast its net in another's pond, in an attempt to catch any fish that gets trapped.  In addition to not citing any authority, Defendants have not made clear how disclosure of WHI Agudelo's caseload and findings in other FLSA investigations could even remotely assist Defendants in determining whether WHI Agudelo was impacted or influenced in her assessment.  This route was a dead-end for Defendants when WHI Agudelo testified that bonuses were not based on caseloads nor findings.  Defendants have not overcome their burden to establish that this is anything more than an improper fishing expedition.  *See Taylor*, 329 U.S. at 512 (holding that Petitioner, the party seeking discovery, did not overcome his burden because "No attempt was made to establish any reason why [respondent] should be forced to produce the written statements."); *Tottenham*, 2002 WL 1967023, at *2 (denying, in part, Defendant's discovery request to the documents which Defendant failed to establish objective support).

Instead, these demands are a roving excursion.  In other words, like Defendant's address in *Collens*, these demands are not germane to the case at issue, nor in furtherance of any raised claim or defense.  *See* 222 F.R.D. at 253.  Simply put, Defendants have not produced any relevant facts, in any claim or defense, that WHI Agudelo may have been impacted or influenced in her assessment.  *See Cleveland–Goins*, 1999 WL 673343, *2 (noting that the purpose of discovery is to "flesh out allegations for which they initially have at least a modicum of objective support."); *Tottenham*, 2002 WL 1967023 (permitting discovery only to those documents which Defendant established objective support).

14

Noteworthy, even assuming this was a permissible request, the expense and burden on Plaintiff is simply not proportional to the needs of this case.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery . . . that is relevant to any party's claim or defense and proportional to the needs of the case, considering . . . whether the burden or expense of the proposed discovery outweighs its likely benefit."); *Choice Hotels Int'l*, 2015 WL 9413101, at *2–3 (putting an end to discovery because it was disproportional and a burden on Defendant to produce discovery on vague requests in what seemed like a "gamesmanship looking for a gotcha").

According, Defendants' motion to compel information regarding the number of cases that WHI Agudelo handled between October 2016 and October 11, 2019, and how many of those cases were found to be in violation the FLSA, is denied.

## CONCLUSION

For the reasons stated above, Defendants' motion to compel is DENIED in its entirety.

Dated:  Central Islip, New York
         August 11, 2022

SO  ORDERED:

/s/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge